UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER J. TAFARO, ET                    CIVIL ACTION
AL.

VERSUS                                       NO: 14-1651

INNOVATIVE DISCOVERY, LLC,                   SECTION: "A" (2)
ET AL.

<u>**ORDER AND REASONS**</u>

Before the Court is a **Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and, Alternatively, To Transfer to an Alternate Venue (Rec. Doc. 20)** filed by defendant Innovative Discovery, LLC and a **Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and, Alternatively, To Transfer to an Alternate Venue (Rec. Doc. 24)** filed by defendant Allen C. Outlaw. Plaintiffs Christopher J. Tafaro and Brian C. Combe oppose the motions.

The motions, set for submission on October 8, 2014, are before the Court on the briefs without oral argument.[1] For the reasons that follow the motions are **GRANTED**.

I.    <u>**Background**</u>

Plaintiffs Christopher J. Tafaro and Brian J. Combe

---

[1]The Court declines the request for oral argument as it finds oral argument unnecessary to determine the issues before it.

(collectively "Plaintiffs") became "economic interest owners" of Innovative Discovery, LLC ("Innovative Discovery") in 2006.[2] (Rec. Doc. 27-1, at 1). Innovative Discovery provides a wide range of options for "litigation document solution services." (Rec. Doc. 20-2, at 1). As economic interest owners, Plaintiffs allege that they "regularly received distributions . . . until Defendant Outlaw ("Outlaw") installed himself (putatively) as the sole Member – and Managing Member – of the Company" in February 2012. (Rec. Doc. 1-1, at 2). In addition to the alleged unlawful cessation of the distribution of dividends (in spite of continued tax liability for Plaintiffs arising from their ownership interests) and the alleged breach of fiduciary duty by Outlaw, Plaintiffs claim that Innovative Discovery and Outlaw have failed to adequately respond to requests made in June 2014 to produce books and records to which Plaintiffs claim to be entitled. (Rec. Doc. 1-1, at 3-4). As a result of these alleged grievances, Plaintiffs brought an action in Louisiana state court on July 11, 2014 seeking writs of quo warranto and mandamus and an order for the production of books and records, as well as bringing claims

---

[2]The operating agreement of Innovative Discovery describes an economic interest owner as one identified as such by the underlying agreement (as both Tafaro and Combe were) or generally as one "who acquires an Economic Interest but is not a Member." An economic interest is defined as a "[p]ercentage [i]nterest in the [p]rofits and [l]osses and distributions of the Company's assets . . . but shall not include any right to participate in the management or affairs of the company. . . ." (Rec. Doc. 20-2, at 6).

under the Louisiana Unfair Trade Practices Act and for breach of
contract. (Rec. Doc. 1-1). Both Outlaw and Innovative Discovery
were made defendants to this action. The case was removed to this
Court on July 17, 2014.

Plaintiffs are both residents of Louisiana. (Rec. Doc. 1-1.
at 1). Innovative Discovery is registered in Delaware and has its
principal place of business in Arlington, Virginia. *Id.* Outlaw is
a resident of Virginia. *Id.*

Defendants now move to dismiss the Complaint for lack of
personal jurisdiction and improper venue. Defendants argue that
there is no factual basis for this Court to exercise either
specific or general personal jurisdiction over them. They claim
that any connection to Louisiana arises only from the mere
fortuity that Plaintiffs reside in the forum and that no other
Louisiana contacts relate to the present action. Alternatively,
Defendants argue for a transfer of venue.

## II. <u>Discussion</u>

Plaintiffs contend that the Court can find personal
jurisdiction over the defendants on either a basis of specific
jurisdiction or general jurisdiction.

A federal court sitting in diversity must satisfy two
requirements to exercise personal jurisdiction over a nonresident
defendant. *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688
F.3d 214, 220 (5th Cir. 2012). First, the forum state's long-arm

statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)). The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)). Therefore, the inquiry is whether jurisdiction comports with federal constitutional guarantees. *Id.*

Specific jurisdiction requires a plaintiff to show that 1) there are sufficient, *i.e.*, not random, fortuitous, or attenuated, pre-litigation connections between the non-resident defendant and the forum; 2) the connection has been purposefully established by the defendant; and, 3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. *Pervasive Software*, 688 F.3d at 221. It is well-settled that an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). The "minimum contacts" inquiry is fact intensive and no one element is decisive. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The touchstone is whether the defendant's conduct shows that he could

4

"reasonably anticipate being haled into court." *Id.* (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 469, 470 (5th Cir. 2006)). The defendant must not be "haled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Id.* (quoting *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871-72 (5th Cir. 1999)).

General jurisdiction, on the other hand, does not require a showing of contacts out of which the cause of action arose. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003) (quoting *Cent. Freight Lines v. APA Transport Corp.*, 332 F.2d 376, 381 (5th Cir. 2003)). However, it does require a showing of substantial, "'continuous[,]' and 'systematic' contacts . . . between a defendant and a forum." *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *Bowles v. Ranger Land Systems, Inc.*, 527 F. Appx. 319, 321 (5th Cir. 2013). In the context of a company, these contacts must be such as to "render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)). The Fifth Circuit, noting the "reduced role" played by general jurisdiction, has warned that the general jurisdiction standard is "a difficult one to meet." *Id.* at755 (quoting *Goodyear Dunlop Tires Operations, S.A.*, 131 S.Ct. at 2854);

*Johnston*, 523 F.3d at 609 (citing *Submersible Systems, Inc. v. Perfadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001)).

At this stage a plaintiff need only establish a prima facie case of personal jurisdiction. *See Walk Haydel & Assocs., Inc.*, 517 F.3d at 241. The Court must also construe all disputed facts in the plaintiff's favor. *Id.*

## A. General Jurisdiction over Innovative Discovery

Plaintiffs argue that the following factual allegations are sufficient to establish personal jurisdiction over the defendants: Innovative Discovery did business with a Louisiana company owned in part by Plaintiffs (Digital Legal Services) on a number of occasions between 2006 and 2011;[3] Innovative Discovery at some point in this period undertook specific projects for five other Louisiana companies;[4] Outlaw and two other owners of Innovative Discovery, including plaintiff Tafaro, gave a sales presentation at a law firm in New Orleans;[5] and, defendant Outlaw and two other owners of Innovative Discovery, including plaintiff Tafaro, gave a presentation at the 2009 Association of Legal Administrators meeting in New Orleans.[6] Plaintiffs also claim

---

[3](Rec. Doc. 27-1, at 2, 9)

[4]*Id.* at 2, 5, 7.

[5]*Id.* at 3.

[6]*Id.*

that Innovative Discovery "tasked" them "with seeking business
for [Innovative Discovery] – in [their] capacity as Louisiana
owners of [Innovative Discovery] – from Louisiana businesses."[7]
Relatedly, they attach the following emails: an email exchange in
2009 with an officer of Innovative Discovery exhorting them to
obtain business in Louisiana;[8] another 2009 email exchange,
including a purported officer of Innovative Discovery, Outlaw,
and Plaintiffs, about trying to get some business out of the
Chinese drywall litigation in Louisiana;[9] a 2010 email in which
plaintiff Tafaro is asking a purported officer of Innovative
Discovery for some information that he can pass on to a
prospective client;[10] an email exchange in 2009 between
Innovative Discovery and Digital Legal Services about rates for a
client where Digital Legal Services appears to be acting as a
middle-man;[11] and finally, email exchanges in 2010 regarding a
project with one of the Louisiana clients mentioned above.[12] The
Plaintiffs further allege that they acted at all relevant times
as agents of Innovative Discovery in Louisiana. They also claim

---

[7]*Id.* at 3-4.

[8](Rec. Doc. 27-1, at 26-27).

[9]*Id.* at 64-66.

[10]*Id.* at 56-58.

[11]*Id.* at 51-55.

[12]*Id.* at 28-50.

that "other Members of IDL [Innovative Discovery][including Bruce
Duff,] . . . traveled to Louisiana to seek – and obtain –
business for IDL [Innovative Discovery]." (Rec. Doc. 27-1, at 4).

As there is no allegation that any of the claims in the
present lawsuit arose out of these contacts, the Court assumes
that Plaintiffs offer these in an attempt to make out a prima
facie case for general personal jurisdiction over Innovative
Discovery. Three cases help to illustrate the threshold showing
of contacts necessary to establish a prima facie case of general
personal jurisdiction.

First, this Court examines a case in which the Fifth Circuit
found general jurisdiction to exist, albeit as to an individual.
In *Holt Oil & Gas Corp. v. Harvey*, the defendant had the
following contacts with the forum state, Texas: "(1) [Defendant]
attended college and was formerly employed in Texas; (2)
[Defendant] owns real estate in Texas, specifically a condominium
in Houston; (3) [Defendant] has traveled to Texas on numerous
occasions to visit his children; (4) [Defendant] frequently
visits Texas for recreation; (5) [Defendant] has transacted a
great deal of business in Texas" (including serving as a director
of a company in Texas for which he attended several meetings in
Texas and holding a position as the "sole shareholder" of a
company that had frequent drilling activities and was "involved
in litigation" in Texas, resulting in additional trips by the

Defendant to the forum). 801 F.2d 773, 778–79 (5th Cir. 1986). Importantly, the Fifth Circuit noted that "[n]one of [these] contacts with Texas, alone, would support an exercise of general jurisdiction." *Id.* at 789. Instead, the court noted that it could find general person jurisdiction only when viewing these contacts "*in toto*." *Id.*

This Court now turns to cases in which the Fifth Circuit found that general jurisdiction did not exist. In *Johnston v. Multidata Systems Intern. Corp.*, the court examined the contacts of three defendants. 523 F.3d 602 (5th Cir. 2008). One defendant company sold products to ten different customers in the forum state over the five year span immediately prior to the lawsuit, representing three percent of its sales in that period of time. *Id.* at 611. That same defendant also sent personnel on service trips to the forum, sent employees to attend trade conventions in the forum, and advertised in national publications that reached the forum state. *Id.* Another defendant company, in the five year period prior to the lawsuit, bought over five millions dollars in products from vendors in the forum state, entered into a contract with an unrelated party in the forum governed by the law of the forum, employed two residents of the forum state who worked from the forum state, and at one point had a director who lived in the forum state. *Id.* at 612. The third defendant company had an extensive and diverse set of contacts with the forum state,

prompting the Fifth Circuit to divide the contacts into two categories. In the first category, the Fifth Circuit noted that the defendant entered into contracts with companies located in the forum state and coordinated clinical trials there. *Id.* at 613. However, it also noted that those sales and contracts represented a small percentage of its business. *Id.* In the second category, the Fifth Circuit noted that the defendant had sold a number of products to customers in the forum state but again observed that these sales constituted a small percentage of its overall sales. *Id.* at 613-14. The Fifth Circuit also recognized the following additional contacts of the same defendant: it regularly sent employees on service trips to the forum state, an employee lived in the forum-state, and the defendant had a license to do certain types of specialized work in the forum state. *Id.* at 614. Similarly, in *Bowles* the defendant had several employees working in the forum state and also had employees occasionally participating in training programs there or routing through the forum state for overseas operations. *Bowles v. Ranger Land Systems, Inc.*, 527 Fed. Appx. 319, 321 (5th Cir. 2013). The defendant company paid franchise and unemployment taxes there as well. *Id.* As to all of the defendants in these two cases, the Fifth Circuit found that the contacts were insufficient to create general jurisdiction.

The contacts between the defendants and the forum state in

this case more closely resemble the latter two cases. First, the lack of any specific allegation as to any contacts with the forum since 2011, other than Outlaw's responses to Plaintiffs' requests in June 2014, belies Plaintiffs' claims that the defendants had "continuous" or "systematic" contacts with Louisiana. *See Johnston*, 523 F.3d at 610 ("General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."). Even when examining the 2006-2011 period, the alleged facts fail to suggest "continuous," "systematic," or "substantial" contacts during that time. The two trips to Louisiana by Innovative Discovery personnel and isolated projects with Louisiana companies represent only sporadic contacts.[13] The most numerous contacts arise out of Innovative Discovery's work with Digital Legal Services ("DLS"). Innovative Discovery invoiced DLS for work performed several times in 2006-2011. (Rec. Doc. 27-1, at 9-23). However, that work was not substantial when placed in the

---

[13]The Court also notes that Plaintiffs assert at various points that Innovative Discovery was regularly seeking or undertaking business in Louisiana. Such vague assertions do not factor significantly into a court's determination of personal jurisdiction. *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)(finding that claims that defendant advertised in several publications in the forum and contracted with numerous businesses there were too "vague and overgeneralized" to affect its general jurisdiction analysis); *In re Chinese Manufactured Drywall Products Liab. Litig.*, 767 F. Supp. 2d 649, 658 (E.D. La. 2011) (excluding from consideration of personal jurisdiction "any 'vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts.'") (citations omitted).

broader context of Innovative Discovery's overall business.
Construing the facts in the light most favorable to the
plaintiffs, DLS paid Innovative Discovery around $35,000 total
for its services between 2006 and 2011.[14] While neither party
states what percentage this amount comprised of Innovative
Discovery's total business for that six-year period of time,
there are two important indicators showing that it was an
insubstantial amount. First, Defendants' claim that in any given
year business with DLS "amounted to approximately less than 1% of
[Innovative Discovery's] annual revenue" is undisputed. (Rec.
Doc. 20-2, at 3). Furthermore, even if that calculation was
disputed, this total amount is still clearly insubstantial as
evidenced by Plaintiffs' own documentation. Taking the total
revenue Innovative Discovery derived from DLS and plugging it
into even just one snapshot of Innovative Discovery's total
accounts receivable for one specific period in 2010 shows that
this six-year cumulative amount would still be less than 2% of
Innovative Discovery's business at that specific point of that
one year. (Rec. Doc. 27-1, at 9-25). Similarly, looking at the
accounts receivable statement of 2010 and construing all claims
in favor of Plaintiffs that a business is Louisiana-based,

---

[14]The invoices and vendor balance sheet put the dollar value
at $34,124.41, while Outlaw's affidavit cites a number of
$35,556.97. (Rec. Doc. 38, at 7). The Court will use the latter
number.

Innovative Discovery's revenue from Louisiana-based companies was less than 1% at that time. (Rec. Doc. 27-1, at 24-25). Such a small percentage of business with companies in the forum fails to create contacts sufficient to establish general personal jurisdiction. *See Johnston*, 523 F.3d at 611-614 (holding, in facts with similar percentages, that "neither the total amount of sales nor the percentage of annual sales is substantial or regular enough to create a general presence in [the forum state]").

Two remaining claims of contacts require attention. The Plaintiffs claim at various points in their pleadings and affidavits to have been serving as agents of Innovative Discovery from 2006-2011. First, the Court notes that, generally speaking, merely having a director or employees living in a forum state is not sufficient by itself to establish jurisdiction. *See Johnston*, 523 F.3d at 611-614 (a director and two employees); *Bowles*, 527 F. Appx. at 321 (more than six employees). While the Court notes that in both of those cases mitigating factors decreased the importance of those contacts for a jurisdictional analysis,[15]

---

[15] In *Johnston*, some of the employees resided in and worked from the forum state but did not actually work with customers in the forum state. *Johnston*, 523 F.3d at 612-13. In *Bowles*, the court observed in a footnote concerning the stationing of employees at federal bases in the forum that "we assume without deciding that the presence of these employees at federal enclaves within [the forum] is relevant to assessing [the defendant's] contacts with the state." *Bowles*, 527 F. Appx. at 322, n.1 (citations omitted).

there is no allegation that Plaintiffs in this case, as alleged directors, performed "board business in [Louisiana]." *Johnston*, 523 F.3d at 613 (citing *Perkins*, 342 U.S. 437).[16] Instead, by Plaintiffs' own admissions, their primary role as it relates to Innovative Discovery was to solicit business in Louisiana. (Rec. Doc. 27-1, at 7-8). Courts in this Circuit give little weight to such contacts for purposes of a general jurisdiction analysis. *Johnston*, 523 F.3d at 613 (citing with approval *Ratliff v. Cooper Labs, Inc.*, 444 F. 2d 745 (4th Cir. 1971), in which the Fourth Circuit found no general personal jurisdiction over the defendant although the defendant, among other contacts, employed five salesmen in the forum state). Furthermore, setting aside overgeneralized assertions of contacts, Plaintiffs make specific claims as to acting as agents[17] for Innovative Discovery only at

---

[16] In *Perkins v. Benguet Consol Mining Co.*, the president of a foreign corporation lived in Ohio during the Japanese occupation of the Philippines during World War II. 342 U.S. 437, 447-48 (1952). The Supreme Court found that Ohio could exercise general personal jurisdiction over the company there not simply because its president lived there, but because his activities in Ohio on behalf of the company rose to such a level that Ohio became the company's "principal, if temporary, place of business." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 n.11 (1984) (citing *Perkins*, 342 U.S. at 448).

[17] It is a dubious proposition that an agency relationship can be used for purposes of establishing general jurisdiction. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 759, n.13 (2014) ("Agency relationships, we have recognized, may be relevant to the existence of *specific* jurisdiction. [] It does not inevitably follow, however, that similar reasoning applies to *general* jurisdiction.") (citations omitted) (emphasis in original). As the Court finds the contacts would still be insufficient even if attributing them to Innovative Discovery, it expresses no opinion

14

sporadic intervals in 2009 and 2010 (two sales presentations, three to four work projects, and requesting information about services and rates). (Rec. Doc. 27-1, at 3-7, 26-27, 51-55, 64-66). Assuming that these contacts can be attributed to Innovative Discovery, they are not contacts of the type able to render Innovative Discovery essentially at home in Louisiana. *See Johnston*, 523 F.3d at 614 (discounting the contacts of an employee living in the forum state where "the evidence show[ed] that in the past three years he has performed only thirty-seven days of technical work . . . in [the forum state for the defendant]").

Similarly, this Court notes that Plaintiffs claim that members of Innovative Discovery, including Bruce Duff, regularly traveled to Louisiana to seek business. (Rec. Doc. 27-1, at 4). Even if these claims were not vague and overgeneralized, trips at regular intervals into a forum "[do] not create general jurisdiction" without other substantial contacts. *Johnston*, 523 F.3d at 614 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984)). As noted previously, when so little of the company's business can be attributed to its Louisiana contacts, it cannot be considered substantial, even if continuous or systematic.

In summary, and reviewing these contacts *in toto*, this Court

---

as to this broader issue.

considers the Supreme Court's recent acknowledgment that the ultimate question is not only whether the out-of-state defendants' contacts with the forum are "continuous and systematic," nor even if factors such as sales to residents of the forum can be considered to be substantial, but it is instead whether the "affiliations with the state are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG*, 134 S.Ct. at 761 (quoting *Goodyear Dunlop Tires Operation, S.A.*, 131 S.Ct. at 2851). The contacts alleged here, accepting all uncontroverted allegations as true and construing all disputed facts in favor of Plaintiffs, fall short of this high threshold.  Finally, it is undisputed that Innovative Discovery does not have any property in Louisiana, is not licensed to do business here, does not have a registered agent here, and does not pay taxes here. All work is performed at Innovative Discovery's offices in Virginia. This Court cannot exercise general personal jurisdiction over defendant Innovative Discovery.

**B. Specific Jurisdiction over Innovative Discovery**

Turning to the specific jurisdiction analysis, Plaintiffs have failed to set forth a prima facie case as to the existence of contacts with Louisiana out of which their causes of action arose. *See Pervasive Software*, 688 F.3d at 221. As specific jurisdiction is a claim-specific inquiry, the Court normally

16

applies its analysis to each separate, alleged cause of action. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006). However, many of the present claims suffer from a common deficiency – no contact between the defendant and the forum out of which the cause of action arose. For example, the allegations of the misappropriations of funds or improper failure to issue tax dividends might certainly cause harm to these Louisiana investors in Louisiana, but these activities took place outside of Louisiana and did not in any way specifically target Louisiana. Mere foreseeability of the injury in the forum state is not enough to support a finding of personal jurisdiction absent some showing of defendant's targeting of the forum. *See Calder v. Jones*, 465 U.S. 783, 788-789 (emphasizing in its personal jurisdiction analysis not only the "focal point" of the harm but also of the forum-specific targeting of the libelous story at issue); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (holding that "foreseeability of causing injury in [the forum] . . . is not a 'sufficient benchmark' for specific jurisdiction")(citations omitted); *Antonini v. Blue Gate Farm, LLC*, no. 12-2386, 2012 WL 6632111, at *4 (E.D. La. Dec. 19, 2012)(noting that the context allowing for a finding of specific jurisdiction based on "[t]he effects [test for] jurisdiction . . . is somewhat rare and not expansive").

Plaintiffs' contend that Defendants' alleged refusal to produce books and records of the company in response to Plaintiffs' demands is a contact out of which the cause of action arose. (Rec. Doc. 2-1, at 53-80; Rec. Doc. 28, at 8).[18] This Court finds to the contrary for three reasons. First, the Court notes that Fifth Circuit precedent gives greater weight to a tortious contact initiated by the defendant. *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 334 n.15 (5th Cir. 1982)(emphasizing the importance of the defendant initiating such a contact by contrasting it with cases in which such initiation appeared to be the pivotal fact in previous courts' determinations of specific personal jurisdiction). Finding otherwise could allow a plaintiff to simply manufacture jurisdiction. Here, Plaintiffs initiated the contact and Defendants simply responded. Second, the typical case of such a contact is in a case, for example, of defamation or fraudulent misrepresentation – where that contact is the nexus of the action. *See, e.g.*, *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989) (finding specific personal jurisdiction based on contacts in which the defendants made misrepresentations to the plaintiffs giving rise to a claim of fraudulent

_____

[18] Argument in Plaintiffs' opposition focuses on this particular cause of action and related contacts (other than broad statements that the causes of action "arise directly from Defendant Outlaw's broken promises, deceit, and other tortious conduct"). (Rec. Doc. 28, at 8).

misrepresentation). Here, the nexus of the action is instead how Defendants performed under the agreement. Third, Plaintiffs argue in the correspondence related to that incident that such a refusal is in violation of the applicable provisions of the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, *et seq.*, and of Innovative Discovery's "Amended and Restated Operating Agreement" (which notes that interpretation of the agreement shall be according to the laws of Delaware). *Id.;* (Rec. Doc. 2-1, at 40). Even if Defendants' response to Plaintiff's communications can constitute such a contact and defendant knowingly violated Delaware law, defendant Innovative Discovery cannot reasonably anticipate being haled into Louisiana court to answer for such a violation. *See Antonini*, 2012 WL 6632111, at *4 (coming to a similar conclusion in analyzing a fraudulent misrepresentation claim under non-forum law when a contract was mailed into the forum by the defendant). Finally, the Court notes that mere conclusory allegations of jurisdiction in a Complaint, such as citations to the long-arm statute or broad statements of the presence of minimum contacts, do not create personal jurisdiction where alleged facts do not otherwise support it. *Panda Brandywine Corp.*, 253 F.3d at 869. The Court finds that Plaintiffs have not presented a prima facie showing of personal jurisdiction over defendant Innovative Discovery.

## C. Personal Jurisdiction over Defendant Outlaw

Plaintiffs do not attribute any contacts to defendant Outlaw other than those reviewed above. The Court recognizes that Plaintiffs allege that Outlaw used "[Innovative Discovery] as his alter ego" and that defendant Outlaw is no longer a member of Innovative Discovery due to the claimed "breach of his fiduciary and other legal and contractual duties." (Rec. Doc. 1-1, at 1). The allegations at issue have already been analyzed by the Court and will not be repeated here. Even assuming that the fiduciary shield doctrine would not prohibit the conflation of the individual and company identities in this case,[19] as these contacts were insufficient to establish a prima facie case of personal jurisdiction as to defendant Innovative Discovery, they are also insufficient to establish a prima facie case of personal jurisdiction as to defendant Outlaw.

**D. Other Pending Motions**

Finally, the Court notes that both Defendants filed Motions for New Trial, to Alter or Amend Judgment and / or to Dissolve or Vacate Judgments in response to a state court order requiring Defendants to produce certain items within an abbreviated time-frame. (Rec. Docs. 6 and 11). Defendants argue that this order was obtained in violation of their due process rights and ask

---

[19]The fiduciary shield doctrine holds that personal jurisdiction does not automatically extend to an individual acting in his corporate capacity even if the corporation at issue is found to be under the Court's personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).

this Court to vacate the state court judgment pursuant to F.R.C.P. 59(e), to stay its enforcement during the adjudication of the motion, and to award them attorneys' fees and costs related to the motion. These motions, reset for submission on August 27, 2014, were opposed by Plaintiffs.

The Court's finding of lack of personal jurisdiction will result in a dismissal without prejudice as to the entirety of the Plaintiffs' Complaint. Thus, these motions are granted insofar as the underlying state court order to produce books and records is now moot. Defendants' requests for attorneys' fees and costs in those motions are **DENIED**.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and, Alternatively, To Transfer to an Alternate Venue (Rec. Doc. 20)** filed by defendant Innovative Discovery, LLC is **GRANTED**.

**IT IS FURTHER ORDERED** that the **Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and, Alternatively, To Transfer to an Alternate Venue (Rec. Doc. 24)** filed by defendant Allen C. Outlaw is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' complaint is **DISMISSED** without prejudice in its entirety for lack of personal jurisdiction.

**IT IS FURTHER ORDERED** that the **Motion for New Trial, to**

21

**Alter or Amend Judgment and / or to Dissolve or Vacate Judgment
(Rec. Doc. 6)** filed by defendant Innovative Discovery, LLC and
the **Motion for New Trial, to Alter or Amend Judgment and / or to
Dissolve or Vacate Judgment (Rec. Doc. 11)** filed by defendant
Allen C. Outlaw are **GRANTED** insofar as the underlying state court
order to produce books and records is now moot. Defendants'
requests for attorneys' fees and costs in those motions are
**DENIED**.

February 24, 2015

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

22